UNITED STATES DISTRICT COURT
FILED
JUN 16 2021
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SARAH H. o/b/o A.H.,

Plaintiff,

-v-

ANDREW SAUL,
Commissioner of Social Security,[1]

Defendant.

6:20-CV-6209-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 21)

Plaintiff Sarah H. brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) on behalf of her child, A.H., seeking judicial review of the final decision of the Commissioner of Social Security denying A.H. Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 17) is denied and the Commissioner's motion (Dkt. No. 19) is granted.

## BACKGROUND[2]

On September 27, 2016, Sarah H. filed an SSI application on behalf of her child, A.H., alleging that A.H. has been disabled since August 23, 2015.[3] (Tr. 153-58) Born on

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] The Court assumes the parties' familiarity with A.H.'s medical records and educational history, which is summarized in the moving papers. The Court has reviewed the medical and school records, but cites only those portions that are relevant to the instant decision.

[3] References to "Tr." are to the administrative record in this case.

October April 2, 2010, A.H. was six years old at the time his mother filed the disability application on his behalf. (*Id.*) The application was denied on November 16, 2016, and Sarah H. timely requested a hearing before an Administrative Law Judge. (Tr. 24, 76-85, 91-93) On December 3, 2018, Sarah H. and A.H. appeared with counsel before Administrative Law Judge Brian LeCours (the "ALJ") for a hearing. (Tr. 43-75) On January 31, 2019, the ALJ issued his decision denying A.H.'s SSI claim. (Tr. 21-42) Plaintiff requested review by the Appeals Council, but on December 28, 2018, the Appeals Council denied plaintiff's request, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6, 151-52) This action followed.

## **DISCUSSION**

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the

conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. *Standards for Determining "Disability" Under the Act*

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act. *See* 20 C.F.R. §416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* §416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically

determinable impairment(s) that is "severe." *Id.* §416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* §416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* §416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* §416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* §416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* §416.924(d).

III. *The ALJ's Decision*

The ALJ first found that A.H. was a preschooler on the date of the application and a school-age child at the time of the hearing and disability determination. (Tr. 27) The ALJ then followed the three-step process for evaluating A.H.'s SSI claim. At the first step, the

ALJ found that A.H. has not engaged in substantial gainful activity since the date of his SSI application. (*Id.*) At the second step, the ALJ determined that A.H. has the severe impairments of attention-deficit hyperactivity disorder ("ADHD"); anxiety; and conduct disorder.[4] (Tr. 27-28) At the third step, the ALJ found that A.H. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 28) The ALJ then proceeded to consider whether A.H. has an impairment or combination of impairments that functionally equals the Listings, but concluded that A.H. does not because A.H. does not have an impairment or combination of impairments that result in either marked limitations in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 29-38) As a result, the ALJ held that A.H. has not been disabled within the meaning of the Act since the application date. (Tr. 38)

IV. *Plaintiff's Challenge*

Plaintiff argues that the ALJ erred by giving substantial weight to the opinion of Dr. Abueg because (1) the opinion was stale and (2) Dr. Abeug was a non-examining physician. (*See* Dkt. No. 17-1 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees.

"The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, 1:16-CV-01005, 2018 U.S. Dist. LEXIS 137417 (WDNY Aug. 14, 2018). *See also Cruz v. Commissioner of Social Security*, 1:16-CV-

[4] The ALJ also considered A.H.'s diagnosis of asthma and concluded, after a thorough review of the record, that the condition was non-severe because it presented only as a slight abnormality which caused no more than minimal functional limitations. (Tr. 27-28)

00965, 2018 U.S. Dist. LEXIS 128514 (WDNY July 31, 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition[.]"). Thus, "[a] medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates substantially similar limitations and findings." *Pritchett v. Berryhill,* 1:16-CV-00965, 2018 U.S. Dist. LEXIS 103358, *23 (WDNY June 20, 2018) (internal citations and quotations omitted). *See also Camille v. Colvin*, 104 F. Supp. 3d 343-44 (WDNY 2015) (An opinion is not stale if it is significantly mirrored by records formed at a later date.).

State agency consultant R. Abueg, M.D., a pediatric specialist, reviewed A.H.'s medical and educational records in connection with A.H.'s application for benefits. (Tr. 80-85) On November 16, 2016, Dr. Abueg opined that A.H. had less than marked limitations in acquiring and using information; attending and completing tasks; interacting with others; and health and physical well-being.[5] (Tr. 81-82) Plaintiff argues that Dr. Abueg's opinion was stale because A.H.'s condition deteriorated between November 16, 2016, the date of Dr. Abueg's assessment, and December 3, 2018, the date of the hearing before the ALJ. Plaintiff points to the fact that A.H. was placed on medication to treat ADHD symptoms less than one week after Dr. Abueg rendered the opinion. (Tr. 541-42) Plaintiff also notes that A.H. displayed violent, disruptive, or destructive behavior following Dr. Abueg's November 16, 2016 assessment. (Tr. 209, 220-22)

Contrary to plaintiff's contention, records from the relevant period do not show that A.H.'s condition worsened or deteriorated between Dr. Abueg's assessment on

[5] He also found no limitations in A.H.'s ability to move about or manipulate objects and care for himself. (Tr. 81-82)

November 16, 2016 and the date of the ALJ's disability determination. Between September 6, 2016 and July 10, 2018, A.H. received treatment at Genesee Mental Health for various psychological and behavioral issues. (Tr. 370-371) When rendering the opinion on November 16, 2016, Dr. Abueg correctly noted that A.H. had been diagnosed with ADHD, anxiety disorder and disruptive disorder, and that A.H. was receiving individual and family counseling to address inattentiveness, disruptive behavior, and aggression caused by these impairments. (Tr. 81-82) On November 21, 2016, five days after Dr. Abueg's assessment, A.H. was prescribed Adderall to treat his ADHD and related behavioral problems. (Tr. 541-42) Treatment notes from January 3, 2017 and March 7, 2017 indicate that A.H. showed improvement with the use of behavioral modification techniques and the introduction of Adderall. (Tr. 616-17, 710) On June 21, 2017, Sarah H. reported that both she and A.H.'s teacher felt that A.H. had demonstrated signs of significant academic improvement, including improvements in his ability to focus and a decrease in hyperactivity. (Tr. at 860) In fact, A.H. was on the honor roll. (*Id.*) On September 26, 2017, Sarah H. reported that A.H. was having increased success both at home and in school. (Tr. 974) A.H. remained on the honor roll and Sarah H. reported that his temper tantrums were minimal. (*Id.*) During an appointment on October 16, 2017, both Sarah H. and A.H. indicated good progress and a stability of symptoms. (Tr. at 1018) Sarah H. stated that school was going well and described A.H. as a "model student." (*Id.*)

School disciplinary records reflect that A.H. experienced behavioral issues in November and December of 2017, including some instances of aggressive behavior with teachers and students as well as walking out of school. (Tr. 220-22) On December 11, 2017, A.H.'s Adderall dose was increased to address these issues. (Tr. 1087-90) During

a follow-up appointment on January 15, 2018, Sarah H. reported that A.H. was physically aggressive at times and that he struggled to complete homework in the evening, after the Adderall wore off. (Tr. 1135) A.H. was prescribed an afternoon dose of Adderall to address "rebound symptoms." (Tr. 1138) During a therapy session later that month, Sarah H. indicated that the medication changes were effective and denied any behavioral concerns. (Tr. 1162) During a medication management visit on February 12, 2018, Sarah H. reported concerns with A.H.'s focus. (Tr. 1184-85) She explained that the afternoon dose of Adderall was helpful, and A.H.'s morning Adderall dosage was increased to better manage his symptoms. (*Id.*) During therapy sessions in February and March of 2018, Sarah H. reported that A.H. had improved symptoms, was more responsive at home, and that there had been no negative calls from the school. (Tr. 1213, 1235) During a medication management appointment on April 10, 2018, Sarah H. indicated that A.H.'s behavior had improved overall, with no reports of behavior issues at school for over three months. (Tr. 1258) Similarly, on May 22, 2018, she stated that A.H. continued to do well, was receiving A's and B's, and had positive reports from school with no behavioral concerns. (Tr. 1345) During an August 2018 therapy session, Sarah H. explained that A.H. was maintaining gains but had some "attitude" at home. (Tr. 1442) On September 10, 2018, Sarah H. indicated that A.H. continued to do well, that he had finished the last school year with straight A's and had made the honor roll. (Tr. 1449) She further reported that the A.H.'s new school year was "going great", with no behavioral concerns. (*Id.*)

In sum, the record shows that while A.H. did begin taking Adderall shortly after Dr. Abueg's November 16, 2016 assessment, the medication was effective in treating A.H.'s ADHD symptoms and specifically resulted in better concentration and increased

academic performance. Likewise, when A.H. experienced behavioral issues between November 2017 and January 2018, an increase in his Adderall dosage as well as continued therapy sessions resulted in improved behavior and better cooperation both at home and in school. Thus, the Court's review of the subsequent medical records does not reveal a worsening or deterioration of A.H.'s condition following Dr. Abueg's November 16, 2016 assessment. Instead, the record before the Court shows an overall improvement in A.H.'s ADHD symptoms and disruptive disorder, including better focus and concentration as well as less aggressive behavior and decreased disciplinary problems. Accordingly, Dr. Abueg's opinion was not stale. *See Habschied v. Berryhill*, 17-CV-6217, 2019 U.S. Dist. LEXIS 50656 (WDNY Mar. 26, 2019) (opinions were not stale where subsequent records showed improvement); *Carney v. Berryhill*, 16-CV-269, 2017 U.S. Dist. LEXIS 72784 (WDNY May 12, 2017) (medical opinion issued two years prior to ALJ's decision was not stale because there was no evidence that the claimant's condition had significantly deteriorated after the opinion was issued).

The Court further finds that not only was Dr. Abueg's opinion not stale, but also that Dr. Abueg's status as a non-treating, non-examining physician did not prohibit the ALJ from assigning substantial weight to the assessment. State agency consultants such as Dr. Abueg are highly qualified experts in Social Security disability evaluation, and an ALJ must, at a minimum, consider their opinions. *See* 20 C.F.R. §§ 416.913a(b)(1), 416.927(e). Further, the opinions of consultative sources "may constitute substantial evidence if they are consistent with the record as a whole." *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (NDNY 2005); *Vanterpool v. Colvin*, 12-CV-08789, 2014 U.S. Dist. LEXIS 68303 (SDNY April 22, 2014) (finding the ALJ did not err in

affording great weight to the opinion of the consultative physician where the opinion was consistent with the overall record). Here, the ALJ correctly recognized that although Dr. Abueg did not personally examine A.H., Dr. Abueg's opinion as to A.H.'s less than marked limitations in various domains was consistent with both A.H.'s mental health treatment notes and other evidence in the record, such as testimony from Sarah H. and A.H. as well as A.H.'s school records. (Tr. 30) Because substantial evidence supported Dr. Abueg's opinion, the ALJ was entitled to credit the opinion even though Dr. Abueg did not personally examine plaintiff. *See Oliphant v. Astrue*, 11-CV-2431, 2012 U.S. Dist. LEXIS 114517 (EDNY Aug. 14, 2012) In fact, the "Second Circuit has held that if the record supports a consultative, non-examining medical opinion, the ALJ may accord that opinion greater weight than the opinion of a treating physician." *Id.*; *accord Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).[6]

Moreover, the ALJ did not rely solely on Dr. Abueg's opinion in determining that A.H. was not disabled. Instead, his analysis of A.H.'s capabilities was clearly based on an evaluation of the record as a whole. For example, the ALJ specifically noted that mental health treatment records from the relevant period showed that A.H. responded well to Adderall as well as therapy and that his concentration, focus, and behavior

---

[6] The only other medical opinion evidence in the record as to A.H.'s mental functioning was provided by Licensed Mental Health Counselor Dennis Drew. (Tr. 1539-41) On November 26, 2018, Drew opined that A.H. had marked limitations in attending and completing tasks and moderate limitations in interacting and relating with others as well as caring for himself. (*Id.*) The ALJ's decision to give little weight to Drew's opinion was well supported. (Tr. 30) While the opinions of non-acceptable medical sources such as a licensed mental health counselor are useful, they "do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. Nov. 5, 2008). Further, the ALJ gave good reasons for discounting Drew's opinion even though he had a treating relationship with A.H. The ALJ reasoned that Drew's conclusions were inconsistent with both the record evidence as well as Drew's own treatment notes, which indicated that A.H. had a positive response to therapy and a good prognosis. (Tr. 29, 1539-41) The Court also notes that even if the ALJ had substantially credited Drew's opinion, this assessment alone would not have resulted in a finding of disability. Drew found that A.H. had marked limitation in only one domain, and a child must have a marked limitation in two domains or extreme limitation in one domain to functionally equal the Listings. *See* 20 C.F.R. §416.926a(a).

improved overall because of these interventions. (Tr. 30) The ALJ also relied on A.H.'s academic performance as proof that A.H.'s impairments did not seriously interfere with his ability to concentrate, learn and complete tasks such as schoolwork. (Tr. 29-30) The ALJ noted that A.H. was not in special education classes; had never repeated a grade level; and did not qualify for an individualized education plan. (Tr. 29-30, 57) In addition to attending normal classes, A.H. met or exceeded the academic standards in most subjects. (Tr. 29, 223, 1482) In fact, the ALJ specifically recognized that A.H. made the honor roll at the conclusion of the 2017-2018 school year. (Tr. 29) The ALJ further relied on representations from Sarah H. and A.H. in determining that A.H. had either no limitations or less than marked limitations in all domains. (Tr. 29-30) For instance, the ALJ noted that Sarah H. indicated to treatment providers that A.H. was doing well in school with no recent behavioral concerns, and that A.H.'s tantrums decreased since starting therapy. (Tr. 29-30) The ALJ cited hearing testimony from Sarah H. conceding that she noticed an improvement in A.H.'s concentration and behavior with treatment. (Tr. 30) The ALJ also reasoned that A.H.'s testimony indicating he played video games for up to two hours at a time suggested that he did not have a significant limitation in his ability to concentrate. (Tr. 29) In evaluating A.H.'s ability to get along with others, the ALJ credited A.H.'s testimony that he cooperates with teachers; gets along with other students; and has a best friend on his school bus. (Tr. 29) Thus, it is clear to the Court that the ALJ appropriately considered not only Dr. Abueg's opinion, but also the record as a whole, in rendering his disability determination. *See Jacquelyn C. v. Comm'r of Soc. Sec.*, 19-CV-1647, 2021 U.S. Dist. LEXIS 26360 (WDNY Feb. 10, 2021) (disability determination upheld where ALJ appropriately evaluated plaintiff's functional limitations based on record

as whole, including testimony from plaintiff and her husband, plaintiff's medical records, and the consultative opinion).

For these reasons, the Court finds that Dr. Abueg's opinion was not stale and that the ALJ properly relied on Dr. Abueg's opinion as part of his overall analysis of the record.

Plaintiff also argues that substantial evidence does not support the ALJ's conclusion that A.H. does not have an impairment that functionally equals the Listings. (*See* Dkt. No. 17-1 (Plaintiff's Memo. of Law)) Specifically, plaintiff contends that the ALJ overlooked or discounted evidence of A.H.'s marked limitations in the domains of (1) attending and completing tasks and (2) interacting and relating with others.[7] (*Id.*) For the reasons that follow, the Court rejects this argument and finds that the ALJ's disability determination was supported by substantial evidence.

*Domain of Attending and Completing Tasks*

The domain of attending and completing tasks considers how well a child can focus and maintain attention and how well he can begin, carry through, and finish activities. *See* 20 C.F.R. §416.926a(h). Attending and completing tasks also refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time. *Id.* The Commissioner has set forth certain "[a]ge group descriptors" to help determine whether preschool or school-age children are limited in this domain.[8] The Commissioner's rules provide that a preschooler should be able to pay attention when he is spoken to

[7] The ALJ also found that A.H. has less than a marked limitation in acquiring and using information; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself; and less than a marked limitation in health and physical well-being. Plaintiff does not raise any specific objections to the ALJ's conclusions in these domains. In rendering a decision as to plaintiff's objections, the Court has considered the record in its entirety and finds that substantial evidence supports the ALJ's conclusions as to these domains as well.

[8] Because A.H. was a preschooler at the time of the application and a school-age child at the time of the hearing decision, the ALJ included age group descriptors for both categories.

directly; sustain attention to his play and learning activities; and concentrate on activities like puzzles or art projects. *See* 20 C.F.R. §416.926(a)(h)(2)(iii). The child should be able to sustain focus to do certain things independently, such as gathering clothes and dressing, feeding, or putting away toys. The child should be capable of waiting his turn and changing activities when instructed to do so. *Id.* A school-age child should be able to focus his attention in a variety of situations and follow directions; remember and organize materials; and complete classroom and homework assignments. *See* 20 C.F.R. §416.926a(h)(2)(iv). The child should be able to concentrate on details; not make careless mistakes in age-appropriate work; change activities or routine without distraction; and stay on task. (*Id.*) The child should be able to participate in group sports; read independently; complete family chores; and accomplish transition tasks (*e.g.*, be ready for the school bus, change clothes, change classrooms) without extra reminders. *Id.* Some examples of limited functioning that children of different ages have in this domain include slow focus and failing to complete activities of interest; repeatedly becoming side-tracked and failing to help others; becoming easily frustrated and giving up on tasks, including ones they are capable of completing; and an inability to manage their time and stay organized when completing schoolwork or chores. *See* 20 C.F.R. 416.926a(h)(3).

Ms. Saunders, A.H.'s teacher for the 2017-2018 school year, reported that A.H. had serious or very serious problems working at a reasonable pace, finishing activities or assignments, and focusing or refocusing on tasks. (Tr. 33, 232) Similarly, Sarah H. testified that A.H. had difficulty staying on task and paying attention to homework, and that A.H. needed constant redirection and reminders to complete chores around the house. (Tr. 59, 63) Plaintiff argues that the ALJ erred by failing to account for this evidence

in reaching the conclusion that A.H. had a less than marked limitation in attending and completing tasks. The Court finds otherwise.

"In reviewing the denial of SSI benefits, [the Court] must determine whether the [Commissioner's] decision was supported by substantial evidence and based on the proper legal standard, keeping in mind that it is up to the agency, and not this [C]ourt, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Contrary to plaintiff's contention, the record here reflects that the ALJ properly weighed the conflicting evidence and concluded, on balance, that while A.H. had some difficulty with attending and completing tasks, it fell short of a marked limitation. *See Rodriguez v. Apfel*, 98-CV-3617, 1998 U.S. Dist. LEXIS 21825 (EDNY Dec. 14, 1998) ("[I]t was incumbent upon the ALJ to resolve any discrepancies, and because his determination is supported by substantial evidence in the record, the court is not now positioned to disturb that determination and reassess the conflicting evidence.").

The ALJ expressly noted that he considered both Sarah H. and Saunders' statements regarding A.H.'s inability to maintain attention and concentration but found their assessments to be inconsistent with A.H.'s educational records. (Tr. 33) For example, A.H. met or exceeded the standards in all subjects for the 2017-2018 school year and made the honor roll. (Tr. 33, 1482) A.H.'s 2017-2018 report card rated him satisfactory at staying organized; working neatly and carefully; completing work on time; and completing and returning homework. (Tr. 33, 1482) Likewise, A.H.'s report card for the 2018-2019 school year reflected that he was satisfactory at following directions; staying organized; and working neatly and carefully. (Tr. 223) The 2018-2019 report card further indicated that A.H. showed improvement in accepting responsibility; working

independently; and completing work on time. (*Id.*) Moreover, A.H.'s testimony regarding his participation in school and hobbies provided additional support for the ALJ's determination that A.H. had less than a marked limitation in attending and completing tasks. A.H. testified that he enjoyed science, gym, music, and art. (Tr. 29, 46-47, 49) He stated that he was capable of completing his homework with "just a little bit of struggling." (*Id.*) On November 4, 2016, A.H. reported, during a consultative physical examination, that his daily activities included watching television, listening to music, playing by himself or with siblings or friends, doing homework, playing with toys, reading, and riding his bike. (Tr. 356-57) Lastly, as noted in detail above, A.H.'s attention and focus were significantly improved, over the relevant time period, as a result of medication and counseling.

For these reasons, the Court finds that the ALJ's conclusion that A.H. had less than a marked limitation in attending and completing tasks was supported by substantial evidence in the record. *See Gomes v. Astrue*, 633 F. Supp. 2d 171, 185-86 (SDNY 2009) (affirming finding that claimant diagnosed with ADHD and speech/language delays had less than marked limitation with respect to attending and completing tasks, where, *inter alia,* claimant's symptoms diminished with medication and claimant responded well to re-direction); *Hudson v. Barnhart*, 1:06-CV-1342, 2009 U.S. Dist. LEXIS 127227 (NDNY Apr. 13, 2009) (upholding the ALJ's finding that claimant's limitations in attending and completing tasks were less than marked, despite observations about some "serious" problems in related areas by teachers, because the ALJ's conclusion was supported by substantial evidence, including the opinion of the treating psychiatrist that claimant's attention span was "fine" on the current medication); *Miller v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 384, 388 (2d Cir. 2010) (holding that ALJ was entitled to credit evidence that

claimant participated in sports, maintained the required grade point average, was on track to graduate, had a report card with teacher comments stating he was conscientious and attentive in class, and had successfully been prescribed medication to treat his ADHD, over evidence that claimant's limitations in several domains, including attending and completing tasks, were more limited).

*Domain of Interacting and Relating with Others*

The domain of interacting and relating with others considers how well a child initiates and sustains emotional connection with others; develops and uses the language of their community; cooperates with others; complies with rules; responds to criticism; and respects and takes care of the possessions of others. *See* 20 C.F.R. §416.926a(i). The Commissioner's regulations provide that a preschooler should be able to socialize with children as well as adults; begin developing friendships with children of the same age; share; show affection; and offer to help. *See* 20 C.F.R. §416.926a(i)(2)(iii). The child should be able to understand and obey simple rules most of the time; sometimes ask permission; relate to caregivers with increasing independence; choose friends; and play cooperatively with other children without continual adult supervision. *Id.* A school-age child should be able to develop more long-lasting friendships with children their age; should begin to understand how to work in groups; and should have an increasing ability to understand another's point of view as well as tolerate differences. *See* 20 C.F.R. §416.926a(i)(2)(iv). A school-age child should be also be able to talk to people of all ages, share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners can understand. *Id.* Some examples of limited functioning that children of different ages have in this domain include having no close friends of similar age; avoiding or withdrawing

from people they know; feeling overly anxious or fearful of meeting new people or having new experiences; difficulty playing games or sports with rules; difficulty communicating with others; and difficulty speaking intelligently or with adequate fluency. *See* 20 C.F.R. §416.926a(i)(3)(ii)-(vi).

In her 2017-2018 school year assessment, Ms. Saunders' indicated that A.H. had serious problems expressing anger appropriately and respecting adults as well as obvious problems making and keeping friends. (Tr. 35, 233) Similarly, Sarah H. testified that A.H. was violent or aggressive with her, as well as with teachers and other students. (Tr. 58-59) She also testified that A.H. had difficulty making friends. (*Id.*) Plaintiff contends that this evidence proves that A.H. had at least a marked limitation in the domain of interacting and relating with others. The Court disagrees.

Here again, the ALJ properly weighed the evidence in the record and determined that while A.H. had some limitations in interacting and relating with others, there was insufficient evidence to support the finding of a marked limitation in this domain. The ALJ specifically noted that school records showed only eight disciplinary incidents involving A.H. over a three-year period. (Tr. 29-30) The ALJ explained that not only were the disciplines relatively infrequent, but they did not appear to be highly serious in nature. (*Id.*) A.H.'s parents were not contacted for three out of the eight incidents, and none of the eight disciplines resulted in in-school or out-of-school suspensions. (Tr. 29-30, 222) Thus, the ALJ concluded that the school records were inconsistent with Saunders' and Sarah H.'s assessment of consistent aggressive behavior on the part of A.H. (Tr. 30) The ALJ also noted that, while Saunders stated that A.H. had obvious problems making friends, Saunders' also indicated that A.H. *was* able to play cooperatively with other

children with only slight problems. (Tr. 233) Likewise, Saunders' report that it had not been necessary to implement behavior modification strategies for A.H. over the course of the school year was inconsistent with Saunders' assessment that A.H. had serious problems expressing anger appropriately and respecting adults. (Tr. 233)

In further support of his finding as to a less than marked limitation in this domain, the ALJ relied on A.H.'s 2017-2018 report card reflecting a satisfactory rating in working cooperatively and respecting others during three out of four academic quarters. (Tr. 35, 1482) Similarly, A.H.'s report card for the 2018-2019 school year rated him satisfactory at working cooperatively with others; demonstrating self-control; and following directions. (Tr. 223) A.H. testified that he got along with teachers and other students and that he had a best friend who rode the bus with him. (Tr. 47, 50) Further, A.H. recalled only one instance where he got into trouble for fighting. (Tr. 50-51) The medical records reflect that therapy and medication were successful in managing A.H.'s disruptive disorder. In fact, Sarah H. regularly reported, to treatment providers, that A.H.'s behavior significantly improved with the use of Adderall and that A.H.'s school did not express behavioral concerns. *See Skibinski v. Colvin*, 13-CV-402, 2014 U.S. Dist. LEXIS 152918 (WDNY Oct. 28, 2014) (it was reasonable for the ALJ to conclude that claimant had less than a marked limitation in interacting and relating with others where school reports and medical records showed that claimant performed well in school and claimant's behavioral problems were managed well with medication and therapy, and claimant testified that (1) he had friends at school, (2) he played with his brother and cousin but sometimes fought with them, and (3) he was not a discipline problem and did not fight in class).

In sum, plaintiff is asking the Court to second guess the ALJ's weighing of the evidence, which is not the Court's role. Indeed, the relevant question is not whether there might be some evidence in the record supporting plaintiff's position, but rather whether substantial evidence supports the ALJ's decision. *See Bon ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]ether there is substantial evidence supporting [claimant's] view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision."); *A.R.B. v. Comm'r of Soc. Sec.*, 1:16-CV-0577, 2017 U.S. Dist. LEXIS 71004 (NDNY May 10, 2017) ("[U]nder the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue the evidence in the record could support [his] position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record."). For all the reasons noted above, and after reviewing the record in its entirety, the Court finds substantial evidence to support the ALJ's finding that A.H. had less than a marked limitation in the domain of interacting and relating with others.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 17) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 19) is granted.

The Clerk of the Court shall take all necessary steps to close the case.

**SO ORDERED.**

Dated: June 16, 2021
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge